OPINION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Sandusky Court of Common Pleas which granted the parties a divorce and ordered the division of marital property and the payment of spousal support. For the reasons that follow, this court affirms the judgment of the trial court.
Appellant Virgil Faulkner sets forth the following assignments of error:
"ASSIGNMENT OF ERROR NO. 1
 "THE TRIAL COURT ERRED IN MAKING A `DISTRIBUTIVE AWARD' WITHOUT COMPLYING WITH R.C. 3105.171 AND ERRED BY CHANGING THE TERMS OF THE PROPERTY SETTLEMENT.
"ASSIGNMENT OF ERROR NO. 2
 "THE TRIAL COURT'S RULING GRANTING SPOUSAL SUPPORT WAS AGAINST THE MANIFEST WEIGHT AND THE SUFFICIENCY OF THE EVIDENCE.
"ASSIGNMENT OF ERROR NO. 3
 "THE TRIAL COURT ERRED BY NOT GRANTING THE DEFENDANT'S MOTION TO SET ASIDE THE AGREEMENT OF THE PARTIES."
The facts that are relevant to the issues raised on appeal are as follows. The parties were married in 1978. On June 2, 1997, appellee filed a complaint for divorce. The marital property was itemized and appraised and child support was set according to the guidelines. On August 1, 1997, a hearing was held on appellee's motion for temporary orders. At that time, a temporary agreement was reached as to spousal support and the partial distribution of marital property and appellee's counsel read the agreement into the record. The agreement contained the following provisions: appellant would pay appellee $75 per week spousal support, effective August 1, 1997; appellee would remain in the marital home and would be responsible for payment of the mortgage, utilities and other household expenses; appellant would be responsible for the payments on his personal loan from the credit union and appellee would make available to appellant numerous items of personal property contained in a list attached to the agreement. Upon questioning by the trial court after the agreement was read into the record, both parties confirmed their understanding of the document and its terms and affirmed that they were satisfied with it as to the issues of support, payment of marital debts and division of property. The agreement was made an order of the court and filed on September 2, 1997.
The final divorce hearing was held on December 15, 1997. At the beginning of the hearing, the court expressed its understanding that an agreement had been reached as to some of the issues facing the parties. Appellee's counsel then read into the record the parties' agreement as to visitation and custody of their two children and other related issues, allocation of marital assets and debt, and division of personal property. The parties agreed that the issue of spousal support would be submitted to the court for determination. The trial court then questioned the parties, both of whom stated that they understood the agreement and were satisfied with it. The court then informed the parties that it would enter judgment in accordance with the agreement after the issue of spousal support was litigated. The court heard testimony from both parties relevant to the issue of spousal support.
Appellee testified that she completed one and one-half years of college before she married appellant. She did not work outside the home until five or six years after the marriage when she started to work at a local flower shop for minimum wage. Appellee worked part-time at the flower shop for one year. Appellee did not work again until several years later when she took a part-time, minimum-wage job as a receptionist in an optometrist's office. At the time of the hearing, appellee had been working for another optometrist for three years. Appellee testified that she was currently working between thirty-five and thirty-seven hours per week and earning $7 per hour. She further stated that she did not have health insurance through her job. Appellee testified that her gross weekly earnings are $246.75. Her monthly mortgage payment is $302.40, taxes are $446 a half-year and homeowner's insurance is $201 per year. Her utility bills are $142 monthly and she has a car payment of $214.31 per month. Appellee testified that COBRA health insurance through appellant's job would cost $189 monthly.
Appellant testified that his gross weekly pay is $504.52. He stated that he pays rent of $315.00 per month with utility bills of approximately $112 per month. He testified that he spends approximately $120 per month on food and $60 each month on gas for his car. Appellant further testified that he did not ask appellee to drop out of college. Appellant testified under cross-examination that his 1996 income was $26,299 and for 1995 was $25,247. He stated that his 1997 year-to-date income, according to documentation received from his employer, was $27,132.
The court and the parties noted that, as to appellant's year-to-date income, there was a discrepancy of approximately $4,000 between appellant's most recent pay stub and documentation provided directly to the court by his employer. At the conclusion of the hearing, the trial court asked appellant's counsel to provide it with accurate information from the employer so that a final decision could be made on the issue of spousal support. The court then took the matter under advisement.
On March 24, 1998, before the trial court issued its final judgment entry, appellant filed a motion in which he asked the trial court "to set aside the agreement of the parties as to all matters in their divorce, other than spousal support * * *." Appellant stated that "he was not in agreement with the terms read into the record." Appellant further stated that he and his counsel "had a very strained relationship" at that time which had caused appellant to say he agreed to terms with which he did not really agree. Appellant also stated that he had failed to mention to the court that he was on medication for severe anxiety at the time he said he agreed with the terms read into the record.
On May 11, 1998, the trial court filed its final judgment entry of divorce. In the subsection headed "STIPULATIONS," the judgment entry incorporated by reference "Exhibit A," which set forth the terms of the agreement discussed and accepted by both parties at the December 15, 1997 hearing. The trial court reiterated in the judgment entry that the agreement resolved "the matter of allocation of parental rights and responsibilities and child support (subject to modification), real estate, automobiles, personal property, other property, debt and obligations, and related matters." The trial court found that "* * * each party was represented by counsel through this proceeding, that each party had adequate opportunity to consult with counsel prior to entering into the agreement, that the parties were present when the agreement was read into the record, that each party acknowledged that they understood the agreement, that each was satisfied with it, that neither was pressured or coerced or threatened or under the effect of any substance that impedes her or his ability to make judgments, and that the agreement was voluntary."
As to spousal support, the trial court ordered appellant to pay appellee $50 weekly for four years. In order to secure appellant's spousal support obligation for the full four years, the trial court ordered appellant to obtain a life insurance policy, with appellee as the irrevocable, sole beneficiary, in an amount not less than $10,400. Additionally, the trial court ordered appellant to pay appellee $250 "as costs of suit for the additional hearing necessitated by defendant's motion." While the trial court did not elaborate on this point, it appears that the court was referring to the hearing held on April 27, 1998 as a result of appellant's motion to set aside the agreement. It is from that judgment that appellant brings this appeal.
In his first assignment of error, appellant asserts that the trial court made a distributive award without complying with R.C. 3105.171 and erred by changing the terms of the property settlement. Appellant first argues that the $250 the trial court ordered him to pay appellee is a distributive award and therefore controlled by R.C. 3105.171(E) and (F). Appellant appears to assert that since the award of $250 is not part of the property settlement, spousal support or a cost to be paid to the court, it must be a distributive award. While the trial court did not elaborate on this aspect of its order, it appears to this court after a review of the record that the $250 was intended to be an award to cover appellee's attorney fees. Such an award is within the trial court's discretion. Layne v. Layne (1992),83 Ohio App.3d 559, 568. Accordingly, we find this argument to be without merit.
Appellant next argues that the order to obtain life insurance as described above was in essence an additional property award to appellee that was not part of the original agreement. Appellant asserts that the trial court changed the terms of the agreement by adding the order as to life insurance. There is no evidence in the record, however, that the life insurance policy was in any way intended by the court to be part of a division of marital property. The trial court clearly ordered that the policy be maintained "to secure the obligation to pay spousal support in accord with the terms of this order to the extent possible." This argument is therefore without merit.
Accordingly, this court finds that the trial court did not err by ordering appellant to pay appellee $250 for costs and did not change the terms of the agreed-upon property settlement by ordering appellant to obtain life insurance to secure his spousal support obligation, and appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant asserts that the award of spousal support was against the manifest weight of the evidence. Appellant further argues that appellee failed to prove she is entitled to spousal support.
R.C. 3105.18(C)(1) sets forth the factors which the trial court must consider before making a spousal support award, including the parties' income, the relative earning abilities of the parties, their ages and education, the duration of the marriage and "any other factor that the court expressly finds to be relevant and equitable."
It is well-established that the trial court enjoys wide latitude in determining the appropriateness as well as the amount of spousal support. Bolinger v. Bolinger (1990), 49 Ohio St.3d 120. Such an award will not be reversed unless a reviewing court, after considering the totality of the circumstances, finds that the trial court abused its discretion. Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 67; Cherry v. Cherry (1981), 66 Ohio St.2d 348,352. "The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
In making a spousal support award, a trial court must "consider all of the relevant factors in [R.C. 3105.18] * * * then weigh the need for support against the ability to pay." Layne v.Layne, supra at 562-563. The resulting award must be "fair, equitable and in accordance with the law." Kaechele v. Kaechele
(1988), 35 Ohio St.3d 93, 94. An equitable result requires that "to the extent feasible, each party should enjoy, after termination of a marriage, a standard of living comparable to that established during the marriage as adjusted by the various factors of [R.C. 3105.18]." Buckles v. Buckles (1988), 46 Ohio App.3d 102,110.
After a thorough examination of the entire record of proceedings in the trial court and the very detailed judgment entry, it is clear that the trial court considered all fifteen of the factors set forth in R.C. 3105.18(C) as they applied to the parties in this case. The trial court carried out a thorough analysis of the parties' incomes and the effect that child support and spousal support have thereon. Upon consideration of the foregoing, this court finds that the trial court's spousal support order is not unreasonable, arbitrary or unconscionable and therefore is not an abuse of discretion. Accordingly, appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant asserts that the trial court erred by not granting his motion to set aside the parties' agreement on the division of property. Appellant argues that the agreement as contained in the judgment entry is not an accurate representation of the agreement as it was read into the record at the hearing on December 15, 1997. We note, however, that appellant does not cite specific terms in the judgment entry as being contrary to what was agreed upon at the hearing, or indicate how he has been prejudiced thereby.
This court has thoroughly reviewed the transcript of the December 15, 1997 hearing, with particular attention to the agreement as read into the record, and has compared that with the corresponding portion of the final judgment entry. It appears from the judgment entry that the terms to which the parties agreed at the hearing are included in what the trial court designated as "Exhibit A." Appellant is correct that the exhibit attached to the judgment entry contains details not read into the record at the hearing. This is because it would have been extremely difficult and time-consuming to cover all the necessary details orally at the hearing. Working with the terms articulated at the hearing, the trial court filled in the many details necessary for the order to be complete.
Most significant, however, with regard to appellant's motion to set aside the agreement, is the following exchange between the trial court and appellant:
 "THE COURT: You have been present in court today in the courtroom when the agreement was read into the record?
"THE DEFENDANT: Yes, ma'am.
 "THE COURT: And you have also retained counsel from at least June of 1997, Mr. Oglesby, who has represented you continuously, is that also true?
"THE DEFENDANT: Yes.
 "THE COURT: And have you had an opportunity to consult with him concerning your rights under the law of Ohio in the event of a divorce?
"THE DEFENDANT: Yes.
 "THE COURT: All right. Is the agreement that's been highlighted in the record one that you understand?
"THE DEFENDANT: I hope so.
 "THE COURT: Well, its's sort of a yes or no. If there's anything —
"THE DEFENDANT: Yes, okay, yes.
 "THE COURT: — you don't understand this is the time to tell him and me.
"THE DEFENDANT: Yes.
"THE COURT: Yes, you do understand everything.
"THE DEFENDANT: Right.
 "THE COURT: Is there anything about this agreement that you are not satisfied with, as it relates to just these issues?
 "MR. OGLESBY: The visitation will be delayed. She's not making a decision on visitation.
"THE DEFENDANT: Yes.
 "THE COURT: All right. Are you under the effect of any substance of any kind that is known to affect anybody's ability to reason or to enter into agreements?
"THE DEFENDANT: No.
 "THE COURT: Has anyone forced you, coerced you, pressured you, or made any agreements with you that you have not just heard stated on the record?
"THE DEFENDANT: No.
 "THE COURT: Are you satisfied completely with this agreement, as it relates to this issue at this time?
"THE DEFENDANT: Yes."
Based on the foregoing, this court finds that the trial court did not err by failing to grant appellant's motion to set aside the agreement and, accordingly, appellant's third assignment of error is not well-taken.
On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Sandusky County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J. JUDGE
Richard W. Knepper, J. JUDGE
Mark L. Pietrykowski, J. JUDGE
CONCUR.